Strafford, }
Oct. 4, 1910. }

### GOODWIN *v.* BUELDUC *& a.*

In trespass *quare clausum*, evidence that the plaintiff's ancestors in title were for many years in open and continuous possession of the disputed premises under recorded conveyances and exercised dominion over them during the period is sufficient to establish title as against one who proves no act of ownership or adverse claim on the part of the predecessors upon whose paper title he relies.

Where a general description of land in a warranty deed includes a parcel then belonging to the grantee, a reservation which indefinitely describes the latter tract may properly be construed as expressing the grantor's intent to convey only such land as he owned, and not to exclude a part of his premises from the operation of the deed.

TRESPASS *quare clausum.* Trial by a referee, who found for the plaintiff and reported the facts. Both parties claim title to the *locus*, which is a part of the northerly half of Lot 66, Range 2, in New Durham. Further facts appear in the opinion. Transferred without ruling from the September term, 1909, of the superior court by *Chamberlin*, J.

*Felker & Gunnison*, for the plaintiff.

*Leslie P. Snow*, for the defendants.

PEASLEE, J. The defendants seek to set aside the report of the referee upon the ground that there is nothing to support the finding that John E. Goodwin owned the disputed territory in 1867, and for error in the construction given by the referee to John's

deed to Elisha Goodwin. Both parties claimed that Lot 66 had been divided, but they differed as to the location of the division line. The plaintiff claimed a division of the lot in equal parts, and the defendants one which would include over three fourths of the area in the southerly " half."

There was evidence from which it could be found that John E. Goodwin owned the *locus in quo* at the date of his deed to Elisha Goodwin. The lots in Range 2 are diamond-shaped, with the acute angles at their northerly and southerly extremities. It had been the custom to divide lots in this range by lines running from the easterly to the westerly corners thereof, making halves appropriately designated as northerly and southerly. As early as 1811, the plaintiff's ancestors in title conveyed half of the lot with the mills standing thereon. These mills were in the northerly half. The deed to John E. Goodwin, given in 1856, conveys the southerly half of Lot 95 and the northerly half of Lot 66. Lot 95 joins Lot 66 on the northeast, and the division line in 95 is described as running from the " easterly elbow of the same to the westerly elbow." About 1840, the plaintiff's ancestors in title cut all the timber fit for sawing from the disputed territory, and John E. Goodwin cut wood from it after he took his deed. It has always been wild land.

As against these facts, the defendants showed a paper title beginning in 1843 with a deed purporting to convey one half of Lot 66 and reciting that it was undivided. The deeds continue in this form until 1870, from which time they purport to convey the whole of Lot 66. It is not claimed that the defendants' ancestors in title owned the whole lot. There was no evidence of any acts of ownership by them, save that some of them claimed the disputed territory when showing their lands to prospective purchasers. It did not appear that their claims were made known to the plaintiff or her ancestors in title. Upon this evidence it was reasonable to find that the lot had been divided as indicated, and the conclusion is not open to revision here. *Maxfield* v. *Lumber Co.*, 74 N. H. 158, and cases cited.

In 1867, Elisha Goodwin owned a mill and site in the northeasterly part of Lot 66, extending slightly into Lot 95. In that year John E. Goodwin conveyed to Elisha " the northerly half of lot numbered sixty-six, also the southerly half of lot numbered ninety-five, both of the above parcels being in the second division of lots in said town of New Durham, containing one hundred and twenty-five acres more or less, reserving from the above that portion of land lying southerly and westerly of the easterly shore of the mill-pond and the mill-brook, meaning to convey all my right, title, and

interest in and to the above described premises." The interpretation of this deed is the real question at issue between the parties.

Exception is taken to the consideration of certain evidence by the referee in reaching his conclusion as to the meaning of the deed; but as the final determination of this issue rests with the court, and all the facts are reported, the consideration of inadmissible facts by the referee would not necessitate a new trial. His conclusion being immaterial here, there is no occasion to investigate the grounds upon which it was based.

The defendants contend that the exception excludes from the operation of the deed all land coming within the geographical description "lying southerly and westerly of the easterly shore," etc. But the plaintiff's claim is that it was intended to cover only the mill lot already owned by the grantee, and that the grantor intended to convey all that he owned in the northerly half of Lot 66. In determining this controversy, the surrounding circumstances as well as the language used are taken into consideration. *Electric Light Co.* v. *Jones, ante,* 172. Upon this deed alone, the defendants' contention might perhaps be adopted; but when the fact appears that, as the land lies, such construction would exclude from the deed all of Lot 66, it is apparent that it does not express the intention of the parties. In view of the whole situation, it seems more probable that the plaintiff's claim is well founded, and that the exception covers only the mill lot; while the final clause, declaring the intent to convey all the grantor's interest in "the above described premises," refers to the southerly half of Lot 95 and the northerly half of Lot 66. He had just referred to these tracts as "the above" and quite likely repeated the term with the same meaning. Indeed, unless it was his intent to make it clear that all he excepted out from the conveyance was what he did not own within the described tract, no reason appears for the use of the final clause. The conveyance is a warranty deed, and contains the usual appropriate and easily comprehended language to indicate that a fee is conveyed. This clause could not have been inserted to more explicitly limit the estate the grantee was to take. While there was no occasion for its use for such a purpose, there was occasion to make it plain that the somewhat indefinite "reservation" did not include property within the described tract which belonged to the grantor. The clause seems to have been added to make it certain that the grantor did not "reserve" anything that he himself then owned.

*Exception overruled.*

All concurred.